2003 UT 35

**In re INQUIRY CONCERNING A JUDGE, 00–3JU–094 and 01–3JU–013.**

No. 20030345.

Supreme Court of Utah.

Sept. 12, 2003.

Colin R. Winchester, Salt Lake City, for the Judicial Conduct Commission.

A. Robert Thorup, Scott H. Clark, Stephen B. Nebeker, Salt Lake City, for Judge Anderson.

**PER CURIAM:**

¶ 1 This case raises the issue of disqualification of a Supreme Court Justice in the context of judicial disciplinary proceedings. Judge Joseph W. Anderson has filed a motion seeking to disqualify Justice Michael J. Wilkins from participating in this court's review of proceedings before the Judicial Conduct Commission involving Judge Anderson.

## PROCEDURAL BACKGROUND

¶ 2 The Judicial Conduct Commission investigated and conducted hearings regarding complaints against Judge Anderson. The Commission's findings and proposed sanctions were forwarded to this court for review pursuant to article VIII, section 13 of the Utah Constitution. Thereafter, Judge Anderson moved to recuse Justice Wilkins. In an order dated July 23, 2003, we summarily denied the motion, indicating that an opinion would follow. We now address the basis for our denial of Judge Anderson's motion to recuse.

## DISCUSSION

¶ 3 Judge Anderson relies on two facts in requesting recusal. First, he notes that Justice Wilkins authored an opinion critical of Judge Anderson in another case. Second, Judge Anderson points to the fact that Justice Wilkins' son-in-law is a partner in the law firm of Ray, Quinney & Nebeker, the same firm that Judge Anderson recently retained to represent him in these proceedings. For the reasons set forth below, we conclude that neither of these facts warrants disqualification of Justice Wilkins.

¶ 4 We begin by considering whether either of the facts raised by Judge Anderson requires disqualification under the provisions of the Code of Judicial Conduct, which was enacted by this court pursuant to its constitutional rule-making authority. Utah Const. art. VIII, § 4. We first examine whether the Code requires disqualification because Justice Wilkins authored an opinion in another matter involving Judge Anderson.[1]

¶ 5 The provisions of the Code addressing disqualification are contained in Canon 3 E. The applicable portion of Canon 3 E requires disqualification in proceedings in which the judge's impartiality might reasonably be questioned, including but not limited to instances where the judge has a personal bias or prejudice concerning a party or a strong personal bias involving an issue in the case. Code of Judicial Conduct Canon 3 E(1), (1)(a) (2003). The fact that Justice Wilkins previously heard and decided a case involving Judge Anderson does not establish any bias or prejudice concerning either Judge Anderson or any of the issues presented by this case.

¶ 6 Judges typically bring to the bench a wealth of both legal and life experience that shapes their views and reasoning. Accordingly, the fact that a judge may have views on a particular issue or that a judge adopted a particular point of view or interpretation of the law in a prior case does not constitute bias or prejudice. Simply put, the concepts of bias and prejudice do not include the general views that a judge may have regarding legal issues presented in a lawsuit. Rather, " '[b]ias and prejudice are only improper when they are personal.' " *In re Inquiry Concerning a Judge*, 1999 UT 81, ¶ 35, 984 P.2d 997 (quoting Jeffrey M. Shaman et al., *Judicial Conduct and Ethics* § 4.04 (2d ed.1995) [hereinafter Shaman] ).

¶ 7 In this case, Judge Anderson has not alleged that Justice Wilkins harbors any personal bias or prejudice toward Judge Anderson. Rather, Judge Anderson's allega-

---

1. Prior to his appointment to this court, Justice Wilkins was a member of the Utah Court of Appeals, where he wrote the opinion in *Office of the Guardian Ad Litem v. Anderson*, 1999 UT App 251, 987 P.2d 611. That case involved a petition filed by the office of the guardian ad litem seeking an extraordinary writ directing Judge Anderson to hold a final adjudication hearing within the timetable mandated by statute. In granting the writ, the court of appeals held that the sixty-day period imposed by the statute was mandatory and not subject to waiver.

The judicial conduct matter now before this court bears some relationship to that case inasmuch as it arises from a complaint filed with the Judicial Conduct Commission by the office of the guardian ad litem, in which one of the bases for the complaint was Judge Anderson's alleged failure to hold final adjudication hearings within the statutory period.

tion is limited to the fact that Justice Wilkins previously ruled against Judge Anderson on the particular issue that was presented in a prior case. There is neither a factual nor a legal basis, however, for concluding that a judge who rules against a party on a particular legal issue is biased against that party. For this reason, bias or prejudice must usually stem from an "extrajudicial source," not from occurrences in proceedings before the judge. *Id.* (citing Shaman, *supra*).

¶ 8 In summary, we hold that Justice Wilkins' prior ruling against Judge Anderson in another case does not establish bias or prejudice requiring disqualification, nor does it constitute a situation where Justice Wilkins' impartiality might reasonably be questioned.

■ ¶ 9 We now turn to the second basis for disqualification asserted by Judge Anderson—the fact that Justice Wilkins' son-in-law is a member of the law firm that Judge Anderson recently retained to represent him in this matter. Canon 3 E(1)(d) provides guidance in analyzing this asserted basis for disqualification. It specifies that a judge shall disqualify himself in those cases where the judge, the judge's spouse, or a person within the third degree of relationship to either of them or the spouse of such person "is acting as a lawyer in the proceeding" or "is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding." Code of Judicial Conduct, Canon 3 E(1)(d)(ii), (iii) (2003).

¶ 10 Justice Wilkins' son-in-law does fall within the third degree of relationship to Justice Wilkins. However, in this case, Justice Wilkins' son-in-law is not personally acting as a lawyer in the proceeding. "The fact that a [lawyer] in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge." Model Code of Judicial Conduct Canon 3, cmt. (E)(1)(d) (1990). We therefore address whether Justice Wilkins' son-in-law has more than a de minimis interest in the outcome of Judge Anderson's case.

■ ¶ 11 The commentary to the Model Code of Judicial Conduct, upon which Utah's Code is based, recognizes the difficulty of determining whether and under what circumstances a law firm partner who is related to a judge has an interest that could be "substantially affected" when other attorneys from his or her firm represent a party before that judge. Many factors are relevant to such a determination. They include the size of the firm, the status of the judge's relative within the firm, the type of proceeding, the amount in controversy, and the fee arrangement between the firm and its client. For example, a high profile case involving a substantial amount in controversy, where the firm of the judge's relative had entered into a contingent fee arrangement, would present a much different case from one in which the amount in controversy was small or nonexistent, the firm billed its time hourly, and the case was not likely to have a significant effect on the firm's stature or reputation.

¶ 12 We are aware that this court, in interpreting this Canon, has adopted a bright-line rule that a judge should disqualify herself or himself in any case where the judge is related[2] to a partner of a party's attorney(s). *Regional Sales Agency, Inc. v. Reichert,* 830 P.2d 252, 257 (Utah 1992). For a number of reasons, however, we decline to apply the holding in *Reichert* to this particular case involving a matter of alleged judicial misconduct.

¶ 13 The *Reichert* court adopted this "bright-line proscription" largely to avoid "expensive and time-consuming inquir[ies] into every fee arrangement." 830 P.2d at 257. In so doing, it noted the difficulty of determining whether interests are "more than de minimis" or whether such interests might be "substantially affected" by the outcome of a case. Those difficulties are simply not present in cases involving review of judicial discipline matters where no money is at issue and there is no possibility of a contingent fee arrangement.

**2.** We use "related" here in the way it is used in the Canon, i.e., to mean "the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person." Code of Judicial Conduct Canon 3 E(1)(d) (2003).

¶ 14 Other considerations also counsel against application of the bright-line rule in cases involving review of judicial discipline matters under this court's constitutional authority. The Utah Constitution charges the Supreme Court with the sole responsibility of reviewing the findings and recommendations of the Judicial Conduct Commission. Utah Const. art. VIII, § 13. Accordingly, we are concerned that applying the bright-line *Reichert* rule to cases involving judicial discipline could too easily cause us to abdicate our constitutional duty.[3]

¶ 15 We are satisfied that in this case, where money is not at stake, neither a firm as large and well-established as Ray, Quinney & Nebeker nor its partner, the son-in-law of Justice Wilkins, stands to gain or lose financially or in reputation sufficiently to raise a reasonable question as to Justice Wilkins' impartiality. This is particularly true where any bias on the part of Justice Wilkins would presumably benefit, rather than prejudice, the moving party.[4]

¶ 16 We hold that the facts on which Judge Anderson relies do not create a reasonable basis for questioning the impartiality of Justice Wilkins. Accordingly, Judge Anderson's motion to disqualify Justice Wilkins from this case is denied.

¶ 17 Justice WILKINS does not participate herein.

---

3. Our rejection of the bright-line rule in this case is based on the unique circumstances of a judicial discipline matter where we exercise our constitutional responsibility as the only body assigned to review and implement orders of the Judicial Conduct Commission. In other situations, the bright-line rule enunciated in *Reichert* remains applicable.

4. Justice Wilkins' son-in-law is a partner in the firm hired by Judge Anderson. Accordingly, if Justice Wilkins were to be biased, he presumably would be biased *in favor* of Judge Anderson. In this case, the Judicial Conduct Commission, the party presumably disadvantaged by the firm's relationship to Justice Wilkins, has not sought disqualification. While we do not suggest that Judge Anderson selected his lawyers with disqualification in mind, we are nevertheless cognizant of the fact that allowing a party to disqualify a judge by doing nothing more than hiring a firm where a judge or one of the judge's family members is related to a partner invites judge shopping. *See, e.g.,* Statement of Recusal Policy, United States Supreme Court press release, November 1, 1993 (signed by seven justices) (opining that a bright-line rule would multiply opportunities for "selecting law firms with an eye to producing the recusal of particular Justices"); *Pashaian v. Eccelston Props.,* 88 F.3d 77, 84–85 (2d Cir.1996) (noting the "potential for mischief in ... an inflexible rule" that would allow "a party to recuse a judge by hiring a particular lawyer").