2003 UT App 439

**In the MATTER OF S.T.T., a minor.**

**Darryl Thurgood, Appellant,**

v.

**Darlene Uzelac, Appellee.**

**No. 20030213–CA.**

Court of Appeals of Utah.

Dec. 26, 2003.

---

Darryl Thurgood, Morgan, Appellant Pro Se.

J. Bruce Reading, Scaley & Reading, Salt Lake City, for Appellee.

Before Judges BENCH, GREENWOOD, and ORME.

## OPINION

ORME, Judge:

¶ 1 The trial court's order denying Darryl Thurgood's motion to vacate a contempt order is the subject of this interlocutory appeal.[1]  Darlene Uzelac, Thurgood's former mother-in-law, filed a motion for order to show cause regarding Thurgood's failure to comply with an order granting her visitation with his daughter, S.T.T. The trial court found that Thurgood violated the visitation order and sentenced him to sixty days in jail

for contempt, with the condition that he could purge the contempt by delivering S.T.T. to Uzelac for visitation every other weekend. We reverse.

## BACKGROUND

¶ 2 Darryl and Shauna Thurgood divorced in 1994, and are the biological parents of S.T.T. Shauna Thurgood was S.T.T.'s custodial parent up to the time of her death on April 28, 2000, at which time Darlene Uzelac, Shauna's mother, took charge of S.T.T. Uzelac filed a petition requesting that the court appoint her as S.T.T.'s guardian and conservator.  When Darryl Thurgood learned of his ex-wife's death by reading her obituary in the newspaper, he also filed for appointment as guardian and conservator.

¶ 3 Although the trial court granted Uzelac's temporary restraining order on June 16, 2000, giving her immediate custody of S.T.T., the court awarded temporary custody to Thurgood shortly thereafter.  The court stated in a September minute entry that Thurgood, as "the natural father ... has absolute parental rights."  In an order on February 7, 2001, the court found that "the rebuttable presumption in favor of a biological parent being awarded custody of and guardianship of a minor child has not been rebutted in this case.  Therefore, the father of the minor child, Mr. Thurgood, [as] the sole surviving parent, is the custodian and legal guardian of the minor."  In the same order, the trial court found that "there ought to be some future visitation between Ms. Uzelac ... and the minor child ... at [Thurgood's] approval."

¶ 4 After the parties failed to follow the court's recommendation "to cooperate to see that the child visits appropriately with her grandmother," Uzelac filed an amended petition seeking visitation.  In April 2002, Uzelac filed a motion seeking a temporary visitation order.  In a June minute entry, the court granted the grandparents "supervised visitation for [two] hours the first visit, four hours the second visit, [then] the third visit will be

---

**1.**  This order was entered by Judge Fratto.  Some earlier determinations in this matter, referred to in this opinion, were made by other judges.

unsupervised for six [hours] and the fourth visit will be a weekend." Thurgood responded by taking his daughter to Australia for four weeks. Upon his return, he discovered that his attorney had withdrawn and that, in August, the court had entered an order by which the grandparents[2] were granted visitation of one weekend per month, which was to continue until trial.

¶ 5 In October 2002, Uzelac filed a motion for order to show cause concerning Thurgood's ongoing violation of the August order allowing visitation. In a minute entry on January 9, 2003, the trial court indicated that Thurgood was in contempt, and he was sentenced to sixty days in jail, which he could purge by delivering S.T.T. every other weekend to Uzelac for visitation. Thurgood filed a motion to vacate pursuant to rule 60(b) of the Utah Rules of Civil Procedure. The trial court then signed an order on January 31, 2003, by which the court sentenced Thurgood to sixty days in jail for his willful violation of the August order and indicated that such sentence would be stayed "upon the condition that [Thurgood] purge himself of the contempt by delivering the child to the residence of the Uzelacs ... on alternating Fridays.... Such visitation shall continue during the pendency of this matter." Thurgood's motion to vacate the order was subsequently denied, and this appeal followed.

### ISSUE AND STANDARD OF REVIEW

■ ¶ 6 Although Thurgood purports to raise several issues in his rule 60(b) motion and in his brief on appeal, the only issue properly before this court is the propriety of the trial court's denial of Thurgood's motion to vacate the contempt order. " 'Appellate review of Rule 60(b) orders must be narrowed in this manner lest Rule 60(b) become a substitute for timely appeals.' " *Franklin Covey Client Sales, Inc. v. Melvin*, 2000 UT App 110,¶ 19, 2 P.3d 451 (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 60.68[3] (3d ed.1999)) (emphasis omitted). " ' "A trial court has discretion in determining whether a movant has shown [Rule 60(b) grounds], and this Court will reverse the trial court's ruling only when there has been an abuse of discretion." ' " *Id.* at ¶ 9 (alteration in original) (quoting *Ostler v. Buhler*, 957 P.2d 205, 206 (Utah 1998)) (other citation omitted).

■ ¶ 7 " 'The decision to hold a party in contempt of court rests within the sound discretion of the trial court and will not be disturbed on appeal unless the trial court's action "is so unreasonable as to be classified as capricious and arbitrary, or a clear abuse of discretion." ' " *Barton v. Barton*, 2001 UT App 199,¶ 9, 29 P.3d 13 (quoting *Marsh v. Marsh*, 1999 UT App 14,¶ 8, 973 P.2d 988, *cert. denied*, 982 P.2d 89 (1999)) (other citation omitted). "We also review the sanctions imposed for contempt for abuse of discretion." *Id.*

### ANALYSIS

■ ¶ 8 Rule 60(b) of the Utah Rules of Civil Procedure states in part that "the [trial] court may in the furtherance of justice relieve a party ... from a final judgment, order, or proceeding" for enumerated reasons including excusable neglect, discovery of new evidence, fraud of an adverse party, void judgment, satisfied judgment, or "any other reason justifying relief from the operation of the judgment." Utah R. Civ. P. 60(b). The specific basis of Thurgood's motion under rule 60(b) for relief from the contempt order is somewhat unclear. Instead of focusing on one of the reasons explicitly listed in rule 60(b) for obtaining relief from the order, Thurgood's memorandum in support of his 60(b) motion and his appellate brief mainly argue the merits of the trial court's orders dating back to February 7, 2001. The trial

---

**2.** Thurgood argues in his brief that the trial court erred in granting visitation to Mr. Uzelac, as he was not a party to the litigation. The Uzelacs were evidently divorced at the time the original petition was filed, but they subsequently remarried. Although there may presently be no practical consequence in granting visitation to "the grandparents," we note that such an order could become problematic in the event that the Uzelacs divorce again or Mrs. Uzelac dies. In such an event, Mr. Uzelac would not have established an independent right to visitation, yet might assert that right given the phraseology of the order. It is surely more consistent with the pleadings before the court to grant any grandparent visitation ultimately ordered herein solely to Mrs. Uzelac.

court denied Thurgood's motion and stated that "[t]he argument in support of the motion centers on the merits of the petition, which are properly and more fully considered at the trial. [Thurgood] has failed to identify any applicable basis contained in Rule 60(b)[of the Utah Rules of Civil Procedure] that justifies the relief sought."

¶ 9 However, the catchall provision of rule 60(b)(6) gives trial courts discretion to relieve a party from an order for "any other reason justifying relief from the operation of the judgment." Utah R. Civ. P. 60(b)(6). In his 60(b) motion, Thurgood argued, among other things, that the visitation component of the contempt order had contained no specific finding that visitation was in the child's best interest and, in essence, had the effect of punishing her. In his brief, Thurgood makes the additional argument—which should have been obvious to the trial court—that the sanction of sixty days in jail exceeds the statutory maximum of thirty days. *See* Utah Code Ann. § 78–32–10 (2002). Thus, the "reason justifying relief from the operation of the judgment," Utah R. Civ. P. 60(b)(6), is that the contempt order improperly adjusted visitation to encourage the purging of a contempt sanction that was unlawful because it was in excess of the statutory maximum.

¶ 10 The trial court's contempt order provides in relevant part:

The Court finds that [Thurgood] has willfully violated the Order of the Court after having understood that Order, in that he has not made available the child for visitation with petitioner. Based upon this finding, the Court orders that [Thurgood] be sentenced to sixty (60) days in jail for his contempt.

The Court will stay the imposition of this sentence upon the condition that [Thurgood] purge himself of the contempt by delivering the child to the residence of the Uzelacs between 6:00 and 6:30 p.m. on alternating Fridays commencing with the 10th of January, 2003. The child will re-

main [in] the Petitioner's care and custody until Sunday and will be picked up by [Thurgood] between 6:00 and 7:00 p.m. There [shall] be no discussion between the maternal grandparents and [Thurgood] during the transfer of the child. Such visitation shall continue during the pendency of this matter.

¶ 11 The trial court's authority to grant visitation rights to grandparents, and sanction a parent for noncompliance, is founded on Utah Code section 30–5–2, which previously allowed the court to "grant grandparents reasonable rights of visitation, if it is in the best interest of the grandchildren, in cases where a grandparent's child has died or has become a noncustodial parent through divorce or legal separation." Utah Code Ann. § 30–5–2(2) (Supp.2000). This section was amended in 2002 to add a "rebuttable presumption that a parent's decision with regard to grandparent visitation is in the grandchild's best interests," and such presumption may be overridden based on consideration of factors the court deems relevant. Utah Code Ann. § 30–5–2(2) (Supp. 2003).[3]

¶ 12 Thurgood argues that under either version, the court erred in granting visitation because no evidentiary hearing was held to determine the best interests of his daughter. However, in this interlocutory appeal, Thurgood cannot "use Rule 60(b) as a 'back door' to a direct appeal" of issues outside the scope of the contempt order. *Franklin Covey Client Sales, Inc. v. Melvin*, 2000 UT App 110,¶ 23, 2 P.3d 451.

¶ 13 Both the prior and amended versions of the statute contain a provision by which "[g]randparents may petition the court as provided in Section 78–32–12.2 to remedy a parent's wrongful noncompliance with a visitation order." Utah Code Ann. § 30–5–2(5) (Supp.2000), § 30–5–2(6) (Supp.2003). Section 78–32–12.2 defines the available sanctions and provides, inter alia, that "[u]pon a finding of substantial noncompliance, the

**3.** "The 2002 amendment, effective May 6, 2002, rewrote the section." Amendment notes, Utah Code Ann. § 30–5–2(Supp.2003). *See* Utah Husband and Wife Act, ch. 85, § 30–5–2(2), 2002 Utah Laws 298. For the convenience of the reader, and because section 30–5–2 has not subsequently been amended, we cite to the current version of the statute when referring to the statute as amended in 2002.

court shall order ... make up parent-time for the aggrieved parent and child ... [and] may order ... a fine or jail sentence or other appropriate sanctions as provided under contempt of court in Section 78–32–10." [4] Utah Code Ann. § 78–32–12.2(3)(b),(4)(c) (2002). As applicable in this case, " '[s]ubstantial noncompliance' means conduct which ... substantially interferes with a court-ordered parent-time schedule," *id.* § 78–32–12.2(1)(d), and " '[m]ake up parent-time' means parent-time which is ... of the same type and duration of parent-time as that which was denied." *Id.* § 78–32–12.2(1)(a)(i). Section 78–32–10 provides in part that "[i]f the court finds the person is guilty of the contempt, the court may ... order the person incarcerated in the county jail not exceeding 30 days." *Id.* § 78–32–10.

¶ 14 We hold that the trial court abused its discretion by sentencing Thurgood to sixty days in jail for contempt as this clearly exceeds the statutory maximum of thirty days. Furthermore, the court abused its discretion by making the avoidance of the jail sentence conditional on indefinitely doubled visitation.[5] The statute authorizes "make up parent-time" in the same amount as that denied. *See id.* § 78–32–12.2(1)(a). Since monthly visitation was ordered on August 23, 2002, and the court's minute entry finding Thurgood in contempt was entered on January 9, 2003, there were at most only five missed visits to be made up. However, the only way Thurgood could purge his contempt was to deliver his daughter to her grandparents every other weekend from January 10, 2003, to the time of trial, which was initially set for August 19, 2003, and was later continued indefinitely. Thus, visitation was not increased only by the same time as was denied but rather was doubled indefinitely. The trial court's action was beyond the authorization of the statute and was thus a clear abuse of discretion.

## CONCLUSION

¶ 15 The trial court abused its discretion by entering sanctions for contempt that were in excess of those authorized by statute. The court erred by sentencing Thurgood to sixty days in jail for contempt, and by increasing visitation in excess of the time necessary to make up for Thurgood's past noncompliance. We therefore reverse the trial court's denial of Thurgood's motion to vacate the contempt order and remand for such proceedings as may now be appropriate.

¶ 16 WE CONCUR: RUSSELL W. BENCH and PAMELA T. GREENWOOD, Judges.

---

**4.** Although the term "parent-time" does not obviously include grandparent-time, future visitation in the amount of time previously denied would remedy past noncompliance with a visitation order and would be an appropriate remedy in addressing such noncompliance even absent the statutory directive. The term "parent-time" first appeared in a 2001 amendment to the divorce statute and replaced references to parental visitation. *See* Utah Code Ann. § 30–3–5 (Supp.2003) & accompanying amendment notes (explaining that the 2001 amendment, among other things, "substituted 'parent-time rights of parents and visitation rights of grandparents' for 'visitation rights of parents [and] grandparents' "). Less precisely, the 2001 amendment to the contempt statute "substituted 'parent-time' for 'visitation' throughout the section." Amendment notes, Utah Code Ann. § 78–32–12.2 (2002). Further-

more, the statute that grants grandparents visitation rights specifically refers grandparents to section 78–32–12.2 "to remedy a parent's wrongful noncompliance with a visitation order." Utah Code Ann. § 30–5–2(6) (1998 & Supp.2003). Thus, although the terms have changed, the concept of "visitation" and the means of remedying noncompliance have remained the same.

**5.** We note that pursuant to section 78–32–12.2, there could be situations where it would be proper for the trial court to order make up time "at twice the amount of time previously wrongfully denied." Utah Code Ann. § 78–32–12.2(6)(b) (2002). However, it would still be a fixed amount of time and in no event should visitation be indefinitely doubled as a component of sanctioning contempt.