Neal OSTLER, Plaintiff and Appellant,

v.

Dave BUHLER, an individual, Utah Department of Commerce, a political subdivision of the State of Utah, Gary W. DeLand, an individual, Utah Department of Corrections, a political subdivision of the State of Utah, Doug Bodrero, an individual, Duane Richens, an individual, Utah Department of Public Safety, a political subdivision of the State of Utah, and John Does 1 through 25, Defendants and Appellees.

No. 970056.

Supreme Court of Utah.

April 21, 1998.

Mark A. Besendorfer, Salt Lake City, for plaintiff.

Jan Graham, Attorney General, Annina M. Mitchell, Debra J. Moore, Assistant Attorneys General, Salt Lake City, for defendants.

DURHAM, Associate Chief Justice:

Neal Ostler appeals from the district court's denial of his rule 60(b) motion to set aside an order dismissing his civil rights complaint. We affirm the dismissal.

The State of Utah employed Ostler as a law enforcement officer and discharged him without cause. Ostler sued for wrongful termination, defamation, slander, tortious interference with prospective and existing economic relations, and invasion of privacy. The two parties negotiated a settlement agreement that Ostler signed on August 3, 1994. Ostler agreed to release all claims in return for $50,000.

The Release Agreement included the following recitals:

7. It is Ostler's "goal" as part of this settlement agreement that he be reinstated ... in order to be eligible and participate in the Public Safety Retirement Program with the Utah State Retirement Systems/Board. The Defendants are not a guarantor of that goal and the terms, conditions and enforceability of this release are not conditioned on Ostler achieving that goal.

8. The parties recognize that there are rules and regulations governing the Utah Retirement Systems/Board and Federal and State law that may be unknown at this time. The monies paid herein shall be a full and complete settlement of any and all of Ostler's claims as hereinafter provided,

even in the event that the plaintiff is unable to achieve his goal as set forth in paragraph 7 above. . . .

3. The monies paid as provided ... herein shall be a full and complete settlement of any and all of Ostler's claims ... without further obligation from the Defendant[s], even in the event it is determined subsequent to the execution of this release that the laws, rules and regulations [governing this agreement or Ostler's reinstatement], prohibit Ostler from achieving his goal as provided in Paragraph 7 of the recitals above. The Defendants are not guarantors of Ostler[']s goal or his eligibility to participate in the Public Safety Retirement Program; and the terms, conditions and enforceability of this release are not conditioned on Ostler achieving that goal. . . .

11. Ostler acknowledges and agrees that no representations, warranties, guarantees or assurances have been made by the Defendants, their agents or employees, the Defendant's [sic] Attorneys, the State of Utah, their agents and employees, or plaintiff[']s attorney, as to Ostler's eligibility to participate in the Public Safety Retirement Program, including but not limited to representations, warranties, guarantees or assurances as to the amount of money that it will take for Ostler to participate in the Public Safety Retirement Program, the technical and legal requirements to participate in the Public Safety Retirement Program, or grade levels acceptable to the Public Safety Retirement Program. . . .

13. It is understood that Ostler will be executing this Release and Settlement Agreement on the 3rd day of August, 1996 and that the terms and conditions of this release will be binding on Ostler from that day forward.

Prior to signing this agreement, Ostler tried to find out how much money he would need to restore his state retirement account to its pre-dismissal levels. He learned that he could not get the information he needed until he actually accomplished reinstatement. He therefore signed the agreement knowing that the settlement amount might turn out to be insufficient to replace his previously acquired amount.

Once he obtained his reinstatement, Ostler contacted the retirement office and found he would need to redeposit more than $49,000 to revive his previous account. At this point, Ostler filed a Notice to Rescind Settlement Agreement of Parties on his own behalf. His main reason for seeking to set aside the settlement was that the settlement amount was insufficient to allow him to fund a full retirement in the Utah Public Safety Retirement System. Later that day, the judge met with the attorneys for both sides and decided to "let the settlement stand." Ostler proceeded with his motion to rescind the settlement because of "mistake, inadvertence, surprise or excusable neglect" under rule 60(b). On August 19, 1994, Ostler also filed a Notification of Substitution of Attorney and Petition by Plaintiff to Represent Himself Pro Se. On September 23, 1996, the district court entered an order denying plaintiff's rule 60(b) motion to rescind the settlement agreement.

A trial court may set aside a final order for reasons of "mistake, inadvertence, surprise, or excusable neglect." Utah R.Civ.P. 60(b)(1). "A trial court has discretion in determining whether a movant has shown 'mistake, inadvertence, surprise, or excusable neglect,' and this Court will reverse the trial court's ruling only when there has been an abuse of discretion." *Larsen v. Collina*, 684 P.2d 52, 54 (Utah 1984). As we have said, "[s]ettlements are favored in the law, and should be encouraged, because of the obvious benefits accruing not only to the parties, but also to the judicial system." *Tracy–Collins Bank & Trust Co. v. Travelstead*, 592 P.2d 605, 607 (Utah 1979).

The record and briefs before us clearly indicate that this is a case of settlor's remorse. Ostler knew at the time he signed the settlement agreement that the settlement amount might not cover his retirement fund. He could have taken the case to trial, but he chose to settle. On this record, the trial judge was within his discretion in dismissing Ostler's claim. Ostler made no mistake, was not surprised, and did not neglect any point

in signing the settlement agreement. He recognized fully the chance he took in signing the agreement. Ostler said in his affidavit: "It was like a 'catch–22.' I needed the information to go forward with settlement but couldn't get the information until I'd gone forward." Ostler's situation does not meet any of the grounds for a rule 60(b) motion. Therefore, we affirm the district court's dismissal.

HOWE, C.J., and STEWART, ZIMMERMAN and RUSSON, JJ., concur in Associate Chief Justice DURHAM's opinion.