2000 Utah Ct. App. 110

**FRANKLIN COVEY CLIENT SALES, INC., Plaintiff and Appellee,**

v.

**David MELVIN, Defendant and Appellant.**

No. 981850–CA.

Court of Appeals of Utah.

April 20, 2000.

---

Neil A. Kaplan, Clyde, Snow, Sessions & Swenson, Salt Lake City, and Marsha A. Ostrer, Ostrer & Associates, Silver Spring, Maryland, for Appellant.

Steven C. Bednar, Manning, Curtis, Bradshaw & Bednar LLC, Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and ORME.

## OPINION

BENCH, Judge:

¶1 Appellant David Melvin (Melvin) appeals from the trial court's denial of his Rule 60(b) motions for post-judgment relief. *See* Utah R. Civ. P. 60(b). We affirm.

## BACKGROUND

¶2 Melvin, a Maryland resident, was employed by Franklin Covey (Franklin)[1] from January 1992 until September 1997, at first on a salary plus commission basis. In April 1997, Franklin informed Melvin that his employment would be terminated due to inadequate sales. Melvin then proposed to work on a straight commission basis in exchange for retaining his job. Melvin and Franklin then entered into a Compensation Agreement, which contained the following provision: "According to Franklin policy, commissions are paid only for those services delivered while you are employed by Franklin."

¶3 Franklin thereafter terminated Melvin, effective September 12, 1997, and paid Melvin his commissions for the sales of services and products delivered before that date. In exchange for the commission payment, Melvin signed a Release acknowledging receipt of payment and releasing Franklin "from all liability arising out of failure to pay [Melvin] commissions for sales completed before [his] termination on September 12, 1997."

¶4 A few months later, Melvin sent Franklin a letter and a copy of a draft complaint, indicating his intention to file the complaint in federal district court in Maryland unless Franklin paid him an additional $600,000. His demand was based upon a theory of unjust enrichment for work he performed while employed by Franklin. Upon receipt of the complaint, and based upon the parties' Compensation Agreement and the Release, Franklin filed a declaratory judgment action in Utah state court, requesting a declaration that: (1) Franklin had "no obligation to pay Melvin compensation or commissions for potential future sales or for seminars scheduled or products sold subsequent to the effective date of Melvin's termination"; and (2) the Release barred any "other claims related to payment of compensation or commissions for services performed by Melvin during his employment with Franklin Covey."

¶5 Melvin filed his complaint in federal district court in Maryland approximately three weeks after the Utah declaratory judgment action was filed. Melvin removed the declaratory judgment action to federal dis-

---

1. Melvin asserts that his employer was Franklin Covey Company, Inc. (FCC), and not Franklin Covey Client Sales (FCCS). However, as we explain hereinafter, this distinction is irrelevant to the disposition of this appeal. Accordingly, for the sake of clarity, we refer to appellee simply as Franklin.

**454**

trict court in Utah, but the federal district court subsequently remanded the case to Utah state court. Melvin filed a motion to dismiss for lack of personal jurisdiction, and Franklin filed a motion for summary judgment.

¶ 6 The Utah state court denied Melvin's motion to dismiss and granted Franklin's motion for summary judgment, concluding: (1) the Release barred any claims for commissions prior to Melvin's termination; and (2) the Compensation Agreement barred his claims for post-termination commissions. On July 27, 1998, the Utah state court entered a final declaratory judgment in favor of Franklin.

¶ 7 Melvin filed a Notice of Appeal on September 11, 1998—forty-six days after entry of the final declaratory judgment. The Utah Supreme Court thereafter dismissed the appeal because it was not timely filed. After filing the untimely Notice of Appeal, Melvin filed the following five post-judgment motions with the trial court: (1) Motion for Extension of Time to File Appeal; (2) Motion to Stay; (3) Motion for Sanctions; (4) Motion for Relief From Judgment, pursuant to Rule 60(b)(1); and (5) Motion for Relief From Judgment, pursuant to Rule 60(b)(2) and (3). The trial court denied all five post-judgment motions. Melvin then filed a timely Notice of Appeal, challenging only the trial court's denial of his two Rule 60(b) motions.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 The first issue we address is whether the Utah state court had personal jurisdiction over Melvin, a Maryland resident.

A denial of a motion to vacate a judgment under rule 60(b) is ordinarily reversed only for an abuse of discretion. However, when a motion to vacate a judgment is based on a claim of lack of jurisdiction, the district court has no discretion: if jurisdiction is lacking, the judgment cannot stand without denying due process to the one against whom it runs. Therefore, the propriety of the jurisdictional determination, and hence the decision not to vacate, becomes a question of law upon which we do not defer to the district court.

*State Dep't of Soc. Servs. v. Vigil,* 784 P.2d 1130, 1132 (Utah 1989) (citations omitted).

¶ 9 The second issue we address is whether the trial court erred in denying the Rule 60(b) post-judgment motions insofar as they were premised on grounds other than jurisdiction. " 'A trial court has discretion in determining whether a movant has shown [Rule 60(b) grounds], and this Court will reverse the trial court's ruling only when there has been an abuse of discretion.' " *Ostler v. Buhler,* 957 P.2d 205, 206 (Utah 1998) (citation omitted).

## ANALYSIS

### A.  Personal Jurisdiction

¶ 10 Although Melvin does not present it as such, the challenge to personal jurisdiction in the context of an appeal from the denial of a Rule 60(b) motion is properly brought under Rule 60(b)(4), which permits the trial court to relieve a party from a void judgment. *See* Utah R. Civ. P. 60(b)(4); *see also Richins v. Delbert Chipman & Sons Co.,* 817 P.2d 382, 385 (Utah Ct.App.1991) (stating judgment " 'is void *only* if the court that rendered it lacked jurisdiction of the subject matter or of the parties' ") (citation omitted).

■ ¶ 11 Melvin moved to dismiss the declaratory judgment action for lack of personal jurisdiction, arguing that he lacks sufficient minimum contacts with Utah to allow a Utah state court to assert personal jurisdiction over him. Melvin asserts that he did not transact business in Utah as required for jurisdiction to attach. Our long-arm statute provides, in relevant part, that any person who transacts any business within this state "submits himself . . . to the jurisdiction of the courts of this state." Utah Code Ann. § 78–27–24 (Supp.1999). "The words 'transaction of business within this state' mean activities of a nonresident person, his agents, or representatives in this state which affect persons or businesses within the state of Utah." *Id.* § 78–27–23 (1996). In enacting the long-arm statute, our legislature explicitly stated that the statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due pro-

cess clause of the Fourteenth Amendment to the United States Constitution." *Id.* § 78–27–22.

¶ 12 Melvin was physically present in Utah, on work-related trips, ten times during the course of his employment with Franklin. The first nine trips were for conferences or training meetings required by Franklin. The tenth trip was a one-day trip in May 1997, made at Franklin's request, during which Melvin met with a former client of his. Melvin contends the jurisdictional impact of these trips is somehow negated by the following factors: (1) all ten trips were at the behest of his employer; (2) all ten trips were required for him to keep his job; (3) he did not make any sales or place any orders while in Utah; and (4) he was not paid for his time in Utah. Melvin "admits to offering assistance in Utah" on his tenth trip, but asserts that this is not sufficient to obtain jurisdiction over him because "his actions were directed by his employer FCC to assist its own sales force in Utah[,] and were not intentional actions undertaken by [Melvin]." Melvin, however, concedes that his tenth trip has a connection to the relief sought in this matter when he asserts, in his brief, that none of his "trips to Utah, *with the exception of the [tenth trip]*, have any reasonable connection to the relief sought." (Emphasis added.)

¶ 13 Moreover, Melvin's Maryland federal court action sought compensation for the work he performed on the tenth trip to Utah. His Maryland complaint alleges as follows:

> On one or more occasions, Melvin traveled to Utah to meet with potential customers of Franklin to help develop a relationship. In particular, Melvin met with representatives of GEC–Marconi Hazeltine in Salt Lake City in May 1997. *Melvin's efforts resulted in the development of a major new customer for Franklin. Franklin has not compensated Melvin for his efforts with GEC–Marconi Hazeltine.*

(Emphasis added.) Melvin's own allegations, admissions, and concessions belie his contention that his contacts with Utah have no reasonable connection to the relief sought in this matter.

¶ 14 Franklin's assertion, in its complaint for declaratory relief, that "Melvin worked and performed services in Utah and solicited customers in the State of Utah" was a sufficient initial jurisdictional allegation. However, once Melvin challenged jurisdiction in his motion to dismiss, Franklin was required to demonstrate that jurisdiction was proper, which it did. *See Neways, Inc. v. McCausland,* 950 P.2d 420, 422 (Utah 1997) (stating that " 'plaintiff is only required to make a prima facie showing of personal jurisdiction' " and that " 'any disputes in the documentary evidence are resolved in the plaintiff's favor' ") (quoting *Anderson v. American Soc'y of Plastic Surgeons,* 807 P.2d 825, 827 (Utah 1990)). In ruling on Melvin's motion to dismiss for lack of personal jurisdiction, the trial court had before it at least the following documents: (1) Franklin's complaint for declaratory relief; (2) a copy of Melvin's Maryland federal court complaint (attached as an exhibit to Franklin's complaint for declaratory relief); (3) Melvin's motion to dismiss; and (4) a "Declaration" prepared by Melvin (attached to his motion to dismiss). This "Declaration" contains, among other things, a listing of the ten trips to Utah and their respective lengths and purposes, as well as an admission that the tenth trip was an "exception" to his general position that he did not voluntarily conduct business in Utah.

¶ 15 It is clear that Melvin " ' "purposefully avail[ed himself] of the privilege of conducting activities within [Utah], thus invoking the benefits and protections of its laws." ' " *SII MegaDiamond v. American Superabrasives,* 969 P.2d 430, 435 (Utah 1998) (citations omitted). It is equally clear that the " ' "claims aris[e] out of [Melvin's] forum-state activity." ' " *Id.* (citations omitted). Thus, in light of the foregoing, it is clear that the trial court had jurisdiction over Melvin pursuant to the long-arm statute.

¶ 16 This, however, is not the end of our inquiry. We must still determine whether exercising jurisdiction over Melvin "offends 'the "traditional conception of fair play and substantial justice." ' " *Bradford v. Nagle,* 763 P.2d 791, 795 (Utah 1988) (citations omitted). Due process requires us to consider: "(1) whether the cause of action arises

out of or has a substantial connection with the activity; (2) the balancing of the convenience of the parties and the interest of the State in assuming jurisdiction; and (3) the character of the defendant's activity within the State." *Brown v. Carnes Corp.*, 611 P.2d 378, 380 (Utah 1980).

¶ 17 We have already determined that the cause of action arises out of activity within Utah. We conclude that due process is satisfied because Melvin had "fair warning that [his activities] may subject [him] to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring). Simply stated, Melvin cannot concede the number and quality of his contacts with Utah, seek compensation for his work in Utah, and then claim that he "never knowingly, intentionally, or unintentionally, subjected himself to the jurisdiction of the Utah courts." Litigating this declaratory judgment action in Utah may well be inconvenient for Melvin; but requiring him to litigate here, in light of the "character of [his] activity within the [s]tate," is not violative of his due process rights. *Brown*, 611 P.2d at 380. In sum, the trial court correctly determined that personal jurisdiction was proper, and the exercise of long-arm jurisdiction comports with due process.

### B. Remaining Rule 60(b) Motions

#### 1. Scope of Review

¶ 18 Melvin's first appeal, taken from the entry of summary judgment and the resulting declaratory judgment order, was dismissed by our supreme court because he filed a Notice of Appeal forty-six days after entry of judgment. *See* Utah R.App. P. 4 (stating notice of appeal "shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from"). Hence, the summary judgment in favor of Franklin, and the resulting declaratory judgment order, are not before us in this appeal. The only issues properly before us concern the trial court's denial of Melvin's two separate Rule 60(b) motions for relief from judgment: one under 60(b)(1) (mistake); and the other under 60(b)(2) (newly discovered evidence) and

60(b)(3) (fraud, misrepresentation, or misconduct).

¶ 19 Our review of the trial court's rulings on these motions is limited in scope:

[E]ven when an order on a Rule 60(b) motion is appealable, the appeal is narrow in scope. An appeal of a Rule 60(b) order addresses only the propriety of the denial or grant of relief. The appeal does *not*, at least in most cases, reach the merits of the underlying judgment from which relief was sought. *Appellate review of Rule 60(b) orders must be narrowed in this manner lest Rule 60(b) become a substitute for timely appeals.* An inquiry into the merits of the underlying judgment or order must be the subject of a direct appeal from that judgment or order.

12 James Wm. Moore et al., *Moore's Federal Practice* § 60.68[3] (3d ed.1999) (second emphasis added).

#### 2. Rule 60(b)(1) (Mistake)

¶ 20 Rule 60(b)(1) permits the trial court, in its discretion, to relieve a party from a final judgment if the party demonstrates "mistake, inadvertence, surprise, or excusable neglect." Utah R. Civ. P. 60(b)(1). "Although 'mistake, inadvertence, surprise, or excusable neglect' are recognized as grounds for relief from a final judgment by Rule 60(b)(1), the Rule is completely silent on what these terms mean." 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.41[1][a] (3d ed.1999).

¶ 21 To clarify what qualifies as a "mistake" entitling an appellant to challenge a trial court's denial of a Rule 60(b)(1) motion, we quote the Seventh Circuit Court of Appeals:

[A]n appeal or motion for new trial, rather than a [Rule] 60(b) motion, is the proper avenue to redress mistakes of law committed by the trial judge, as distinguished from clerical mistakes caused by inadvertence, especially where the [Rule] 60(b) motion is filed after the time for appeal has expired.... The policy behind such a reading of [Rule] 60(b) is clear; parties should not be allowed to escape the consequences of their failure to file a timely

appeal by addressing questions of law to the trial court for reconsideration. That is the function of appellate courts. If allowed to raise the same questions in a [Rule] 60(b) motion that would have been raised in an appeal from the merits, a party would be able to effect an indirect extension of the time for appeal by appealing the [Rule] 60(b) motion within thirty days of its disposition.

*Parke–Chapley Constr. Co. v. Cherrington,* 865 F.2d 907, 915 (7th Cir.1989) (citations omitted); *see also Hoult v. Hoult,* 57 F.3d 1, 5 (1st Cir.1995) (stating legal error "is not grounds for relief under Rule 60(b)"); *Spinar v. South Dakota Bd. of Regents,* 796 F.2d 1060, 1062 (8th Cir.1986) (same).[2]

¶ 22 We believe that

" 'judicial error involving a fundamental misconception of the law should be distinguished from inadvertent judicial oversight . . . ,' and that [trial] courts should be more willing to use Rule 60(b)(1) 'to correct a minor oversight, such as the omission of damages, which in most cases would be obvious, than . . . to correct a fundamental error of law, which in many cases would not be as clear.' "

11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure:* Civil 2d § 2858 (1995) (citation omitted). In sum, "[i]f a court merely wrongly decided a point of law, that is not '[mistake], inadvertence, surprise, or excusable neglect.' " *Silk v. Sandoval,* 435 F.2d 1266, 1267 (1st Cir.1971).

¶ 23 In the instant case, the Notice of Appeal assailing the underlying summary judgment and declaratory judgment was not timely filed. Upon failing to timely file a Notice of Appeal, Melvin has attempted to use Rule 60(b) as a "back door" to a direct appeal of the underlying judgments. This is made evident by an examination of the Rule 60(b)(1) motion itself, in which Melvin expressly categorizes all his arguments concerning the trial court's actions as either "errors of law" or "errors of fact." Nowhere in his motion, nor in the supporting memorandum, does he advance proper Rule 60(b)(1) grounds for relief from the judgment—i.e., "mistake, inadvertence, surprise, or excusable neglect." Utah R. Civ. P. 60(b)(1).

■ ¶ 24 The improper focus of this appeal from the denial of a Rule 60(b) motion is further evidenced by the issues Melvin presents for our review. In addition to the issue of personal jurisdiction, previously addressed, he advances only the following three issues:

(1) The trial court lacked subject matter jurisdiction, because the plaintiff was not the real party in interest; [3]

(2) The trial court erred in mechanically adopting the findings of fact and conclusions of law prepared and presented by counsel for the plaintiff; and

(3) The trial court's findings of facts are insufficient to support its conclusions of law and therefore its rulings are a nullity.

¶ 25 In sum, Melvin has not even attempted to present "mistakes" for which relief may be obtained under Rule 60(b)(1). Instead, having missed the deadline for appealing the summary judgment and declaratory judgment order, he attempts to enter the "back door" to the merits of the case by appealing the denial of his Rule 60(b) motions. We

---

2. We recognize that some courts allow relief from legal error under a Rule 60(b)(1) motion. However, these courts generally permit appellate review of legal error under a Rule 60(b)(1) motion only if "relief from judgment is sought within the normal time for taking an appeal." *Barrier v. Beaver,* 712 F.2d 231, 234 (6th Cir.1983); *see also International Controls Corp. v. Vesco,* 556 F.2d 665, 670 (2d Cir.1977) (stating that "a motion for relief from [legal error] under Rule 60(b)(1) may not be made after the time for appeal has elapsed").

Even under this approach, the result in the instant case would be the same because Melvin did not file his Rule 60(b)(1) motion within the prescribed 30–day limit for filing the notice of appeal.

3. Melvin confuses the issues of subject matter jurisdiction and standing. Subject matter jurisdiction is the authority and competency of the court to decide the case, *see* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350 (1969), while standing concerns whether "the plaintiff has a legally protectible and tangible interest at stake in the litigation." *Black's Law Dictionary* 978 (6th ed.1991).

reject Melvin's attempt to present for our review issues that would only have been properly before us on a direct, timely appeal from the summary judgment and the resulting declaratory judgment order.

### 3. Newly Discovered Evidence

¶ 26 A trial court may relieve a party from a final judgment or order if "newly discovered evidence" exists, "which by due diligence could not have been discovered in time to move for a new trial." Utah R. Civ P. 60(b)(2). We need not address the due diligence requirement because it is clear that the alleged "newly discovered evidence" is immaterial, and would not have changed the outcome of this case. *See ProMax Dev. Corp. v. Mattson*, 943 P.2d 247, 253 (Utah Ct.App.1997) (stating that newly discovered evidence must be material and "substantial enough that with the evidence there is a reasonable likelihood of a different result").

¶ 27 As "newly discovered evidence," Melvin refers to an unrelated California case. In that case, Franklin asserted that Franklin Covey Client Sales (FCCS) was the plaintiff's employer, and not Franklin Covey Co. (FCC). That assertion is consistent with Franklin's position in this matter. Presentation of this evidence would therefore not likely have resulted in a different outcome in this case. Moreover, the identity of Melvin's employer is immaterial because the declaratory judgment action was binding upon both FCC *and* FCCS, by virtue of (1) an assignment to FCCS by FCC of "any rights which may be necessary to entitle [FCCS] to prosecute this action as the real party in interest," and (2) a "Consent to be Bound," which provides that any judgment entered in favor of Melvin would be binding on FCC and FCCS. Melvin was thus assured that any judgment in his favor would be binding on both entities. Hence, the trial court did not abuse its discretion in denying the Rule 60(b)(2) motion.

### 4. Fraud, Misrepresentation, or Other Misconduct

¶ 28 A trial court may relieve a party from a final judgment or order if there exists "fraud ... misrepresentation or other

misconduct of an adverse party." Utah R. Civ. P. 60(b)(3). Melvin asserts, very ambiguously, that Franklin's counsel did not represent both FCC and FCCS, and therefore was not authorized to submit the Consent to Be Bound on behalf of FCC. We find this argument wholly meritless. Moreover, we note that Melvin knew that Franklin's counsel represented both FCC and FCCS because counsel entered an appearance on behalf of both entities when both were named as parties in Melvin's Maryland federal court action. Hence, the trial court did not abuse its discretion in determining that Melvin's Rule 60(b)(3) claim fails.

### CONCLUSION

¶ 29 The trial court properly denied Melvin's Rule 60(b) motions. First, the trial court had personal jurisdiction over Melvin because his contacts with Utah were sufficient to meet the requirements of our long-arm statute, and the exercise of jurisdiction over him comports with due process. Second, none of the relevant Rule 60(b)(1) grounds were properly presented in this appeal, and we will not countenance Melvin's attempt to use the "back door" to obtain review of the underlying judgments of the trial court after failing to timely file a Notice of Appeal challenging them. Finally, the trial court did not abuse its discretion in denying Melvin's motions pursuant to Rule 60(b)(2) and (3).

¶ 30 Accordingly, we affirm.

¶ 31 I CONCUR: JUDITH M. BILLINGS, Judge.

¶ 32 I CONCUR, except that as to section A, I concur only in the result: GREGORY K. ORME, Judge.