2008 UT App 134

**Lecia SWALLOW fka Kennard, Petitioner and Appellant,**

v.

**Randy KENNARD, Respondent and Appellee.**

No. 20070198–CA.

Court of Appeals of Utah.

April 10, 2008.

Mary C. Corporon and Allison R. Librett, Salt Lake City, for Appellant.

Randy M. Kennard, Provo, Appellee pro se.

Before Judges GREENWOOD, P.J., DAVIS and ORME, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Lecia Swallow fka Lecia Kennard (Wife) appeals the trial court's denial of her Motion to Set Aside Default Judgment in favor of Randy Kennard (Husband). Wife argues that the trial court erred by not finding that her attorney's alleged mail delivery problems constitutes excusable neglect under

rule 60(b) of the Utah Rules of Civil Procedure. She also contends that the trial court abused its discretion in its modification of the divorce decree. We affirm.

## BACKGROUND

¶ 2 Husband and Wife were married on August 31, 1990, and separated on May 9, 2004, with Husband vacating the marital home. On November 2, 2004, Wife filed a Verified Divorce Complaint. Husband and Wife are the parents of six children, now ages seven to thirteen years old.

¶ 3 On December 6, 2004, Wife filed an affidavit in support of her Motion for Temporary Orders. In the affidavit, Wife sought sole legal and physical custody of the children, as well as "$1,000.00 every two weeks for a total of $2[,]000.00 per month in child support." She also "request[ed] that the [trial c]ourt order [Husband] to continue to pay the temporary alimony as he ha[d] been currently paying for the past seven (7) months since the date of separation." The amount of "temporary alimony" was "$250.00 bi-weekly for a total of $500.00 per month." Wife noted that Husband had quitclaimed the home to her, and Wife asked the trial court that she be allowed to keep the home and "that [Husband] be responsible for the second mortgage on the home which he ha[d] been paying for the past seven (7) months." Additionally, Wife requested "that each party be responsible for one half of the uninsured medical and or dental expenses for the parties['] minor children" and that Husband be responsible for a Home Depot credit card balance as well as his student loan debt. Finally, Wife sought attorney fees and costs, and requested that each party assume his or her own debts incurred following their separation on May 9, 2004.

¶ 4 On March 7, 2005, the trial court issued the Decree of Divorce. Husband and Wife were awarded joint legal custody of the children; the court stated a preference that at age sixteen the children "be allowed the opportunity to live with their father ... on a permanent basis if they so desire" but left it up to the parties to decide physical custody. The trial court set child support at $1,415.00 per month. Both parents were to equally share medical and dental expenses of the children. Wife was awarded the home "along with all equity therein." In Paragraph 14 of the decree, Wife "waive[d,] forfeit[ed,] and disclaim[ed] alimony or spousal support from [Husband] now and forever." Yet in Paragraph 17 of the decree, she was to receive "$231.00 bi-weekly for a period of seventy-two months" as part of the parties' "property settlement." "This property settlement," the decree stated, "shall not be dischargeable, reduced or modified in any way, including, but not limited to any bankruptcy proceeding." Paragraph 19 decreed that Wife would "hold [Husband] harmless [from any] debt obligations incurred since the date of the parties['] separation in May 2004." Husband was ordered to assume the debt of his "student loans [and] Home Depot [credit card]."

¶ 5 On May 4, 2006, Husband filed a Verified Petition to Modify Child Support & Impute Income. In the petition, Husband, an attorney, stated that his income had increased approximately thirty-five percent, contended that Wife could and should be working, and calculated what she would earn with her education and training as an elementary school teacher. Husband estimated Wife's imputed income to be at least $26,000 a year and argued that child support and property settlement payments should be adjusted accordingly. In response, Wife's trial counsel filed an Answer on May 22, 2006, denying all of Husband's assertions except those regarding Husband's increased earning capacity, Wife's degree and training, and the fact that she was planning to move with the children to Texas in June.

¶ 6 During the spring and early summer of 2006, Husband sought discovery on Wife's financial status and capability, specifically on any reasons why Wife could not resume employment. On June 12, 2006, Husband filed a Motion to Amend Petition to Modify Divorce Decree. In the accompanying proposed Amended Petition to Modify Divorce Decree, he again stated that his income had increased approximately thirty-five percent and claimed that Wife was "voluntarily unemployed." Husband sought "either: (a) [to obtain relief] from the property settlement

provisions of the divorce decree; or (b) to deviate from the child support guidelines (taking into account additional monies [Husband] is paying on their behalf); to enable [Husband] to have financial resources to effectuate meaningful contact and visitation with the children in the future." In the Amended Petition, he claimed that the property settlement described in Paragraph 17 of the divorce decree was "in reality contemplated by the parties at the time of the divorce to be payments for the support of [Wife] and/or the parties['] children." Husband also pointed to the fact that Wife had remarried and was about to sell the home for profit, which also constituted a substantial change in circumstances.

¶ 7 Also on June 12, 2006, Husband filed a Certificate of Service of Request for Admissions, Interrogatories & Production of Documents. Husband mailed Wife's trial counsel a letter dated that same day, outlining a proposed discovery plan with July 1, 2006, as the deadline for required initial disclosures and July 31, 2006, as the close of discovery and the trial scheduling conference date.

¶ 8 On July 19, 2006, Husband filed a Motion to Compel due to a lack of response to his letter, discovery requests, and motion to amend the divorce decree. That same day, he also filed a Notice That Requests for Admissions Deemed Admitted. The admissions included assertions that the "bi-weekly payments of $231 ... [were] ... in reality ... payments for the support of [Wife] and/or the parties['] Children"; that "[Wife] stated to [Husband] that it was her belief that she would probably not remarry"; that "[Wife] stated to [Husband] that it was her belief that it would be difficult to remarry due to the number of minor children"; and that "at the time of the divorce it was not contemplated by [Wife] that she would remarry as soon as she has."

¶ 9 On July 21, 2006, the trial court issued an Order Granting Leave to Amend Petition to Modify Divorce Decree. The trial court stated, "It appear[s] that [Wife] was served with a copy of ... the proposed Amended Petition to Modify Divorce Decree[ ] by mail on June 12, 2006." The trial court gave Wife twenty days "to file a response to [Husband's] Amended Petition to Modify Divorce Decree."

¶ 10 On July 27, 2006, Wife's trial counsel filed a sworn Certificate of Service stating that on July 24, 2006, he mailed Husband an Answer to his Request for Admissions, Interrogatories & Production of Documents. The answer does not appear in the record, although Husband's appellate brief includes the first page of the Answer, date-stamped by the district court on September 12, 2006.

¶ 11 On September 12, 2006, Husband again filed a number of legal documents with the trial court: a sworn Certificate of Service stating that Husband had mailed to Wife's trial counsel the Amended Petition to Modify Divorce Decree (along with the Order Granting Leave to Amend Petition to Modify Divorce Degree and a 20 Day Summons), a Memorandum in Support of Motion to Compel Answers to Requested Discovery, and an Affidavit in Support of Motion to Compel. In his affidavit, Husband quoted Wife during the divorce negotiations as saying " '[W]ho is going to want to marry someone with six small children'" and " '[I]t's not going to happen.'" He claimed that Paragraph 17 was labeled as "property settlement" because Wife did not want the tax liability that she would incur if it was labeled "alimony" and that he was concerned that alimony and child support would be set higher if the divorce went to trial. Further, Husband maintained that his assumption of the second mortgage and Wife's receiving the house were also intended as a form of additional support for Wife and the children.

¶ 12 On October 12, 2006, Husband filed a Notice to Submit, arguing that Wife never filed a response to his Motion to Compel. Four days later, the trial court entered an Order, instructing Wife to "fully and in good faith answer" Husband's requests for discovery. The following day, Husband filed a sworn Certificate of Service with the trial court, stating that he had mailed the Order to Wife's trial counsel. In the cover letter to Wife's trial counsel, Husband noted, "I have yet to receive your client's response to my Amended Petition to Modify Divorce Decree, which appears to have been due [eleven days ago]."

¶ 13 On November 7, 2006, Husband filed another Notice to Submit, requesting an entry of a default judgment against Wife for her failure to "answer or otherwise respond to [Husband's] Amended Petition to Modify Divorce Decree as ordered by the [trial c]ourt." Six days later, the trial court executed an Entry of Default against Wife, noting her lack of response to Husband's discovery requests, motion to compel, and amended petition.

¶ 14 On December 7, 2006, Husband filed an Application for Entry of Default Judgment. That same day, Husband also filed a supporting affidavit in which he calculated Wife's imputed income.

¶ 15 Wife did not respond, and on December 12, 2006, the trial court entered a Default Judgment against Wife. The trial court made factual findings of imputed income based on information in Husband's December 7 affidavit, imputing a $3,498 monthly income to Wife. The trial court also considered that Husband's income had increased, and the court interpreted Paragraph 17 as providing spousal support. The trial court then found that even if the payments contained in Paragraph 17 ended, "[t]he circumstances of [Wife] and parties['] children have changed due to [Wife's] remarriage such that their standard of living ... is greater than the standard of living the parties maintained while they were married." Accordingly, the trial court deemed the current situation "inequitable" and granted Husband relief from all payments required in Paragraph 17. The trial court also increased Husband's child support obligations to $1,445 per month.

¶ 16 On January 8, 2007, Wife filed a Motion to Set Aside Default Judgment. In her supporting memorandum, Wife alleged that she never received the October 16 Order, the November 7 Notice to Submit, or the November 13 Entry of Default. In an accompanying affidavit, Wife's trial counsel speculated as to possible mail delivery problems at his office. Wife argued that she should be relieved from the Default Judgment because her trial counsel's irregular mail service amounted to "mistake, inadvertence, surprise, or excusable neglect." *See* Utah R. Civ. P. 60(b). Although Wife's trial counsel did not change the location of his office, on December 11, 2006, he had filed a notice of a mailing address change from a street address to a post office box without further explanation.

¶ 17 In response to Wife's Motion to Set Aside, Husband filed a Verified Objection. Husband provided mailing certificates and envelopes as evidence that he did send the contested filings, as well as copies of correspondence and notes from phone conversations with Wife's trial counsel. "Conspicuously absent from [Wife's] motion," Husband argued, "is any explanation for why [Wife] never filed a response to the Amended Petition to Modify Divorce Decree in the first place." In her Reply, Wife never addressed why she failed to file a response to the Amended Petition to Modify Divorce Decree.

¶ 18 On February 1, 2007, the trial court denied Wife's Motion to Set Aside Default Judgment, noting that under the Utah Rules of Civil Procedure, "service of pleadings by mail 'is complete upon mailing,' " *see* Utah R. Civ. P. 5(b)(1)(B). Moreover, the trial court stated that "the record is uncontroverted that [Wife] was advised that her response to the Amended Petition to Modify was delinquent and that a response to the motion to compel was needed." The trial court then pointed to Husband's notes about telephone conversations he had had with Wife's trial counsel. The failure to respond to Husband's pleadings, the court ruled, "[was] not a consequence of failing to receive documents, but an apparent carelessness and neglect to the proceeding." In its Findings of Fact and Conclusions of Law, the trial court stated that even assuming "mis-delivery of these documents by the mail carrier[,] these facts do not in themselves constitute 'mistake, inadvertence, surprise, or excusable neglect' sufficient to set aside the default judgment in this case." Wife appeals the trial court's ruling.

ISSUES AND STANDARDS OF REVIEW

¶ 19 Wife argues that the trial court erred in denying her Motion to Set Aside Default Judgment. " 'A trial court has discretion in determining whether a movant

has shown [rule 60(b) grounds], and this court will reverse the trial court's ruling only when there has been an abuse of discretion.'" *Franklin Covey Client Sales, Inc. v. Melvin*, 2000 UT App 110, ¶ 9, 2 P.3d 451 (alteration in original) (quoting *Ostler v. Buhler*, 957 P.2d 205, 206 (Utah 1998)); *see also Fisher v. Bybee*, 2004 UT 92, ¶ 7, 104 P.3d 1198. More specifically, in the context of a denial of a rule 60(b) motion, "[w]e review a district court's findings of fact under a clear error standard of review," *Menzies v. Galetka*, 2006 UT 81, ¶ 55, 150 P.3d 480 (citing *Chen v. Stewart*, 2005 UT 68, ¶ 1 n. 1, 123 P.3d 416), while "[w]e review a district court's conclusions of law for correctness, affording the trial court no deference," *id.* ¶ 55 (citing *Richins v. Delbert Chipman & Sons Co.*, 817 P.2d 382, 385 (Utah Ct.App. 1991)). Further, although the existence of a meritorious defense may be a factor, "[a]n appeal of a Rule 60(b) order addresses only the propriety of the denial or grant of relief. The appeal does *not*, at least in most cases, reach the merits of the underlying judgment from which relief was sought." *Franklin Covey Client Sales*, 2000 UT App 110, ¶ 19, 2 P.3d 451 (internal quotation marks omitted).

■■■ ¶ 20 Wife contends that the trial court's action went against the best interests of the children by changing the award of child support by default.[1] Wife next argues that the trial court violated Utah Code section 30-3-39 when it did not submit the parties' case to mediation prior to entering the Default Judgment and that the trial court violated rule 6-401 of the Utah Rules of Judicial Administration when it took up Hus-

band's motion for a default judgment without first deferring to a commissioner. Because these arguments are raised for the first time on appeal, we decline to address them on the merits.[2] *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a general rule, claims not raised before the trial court may not be raised on appeal.").

## ANALYSIS

### I. Rule 60(b)

■■ ¶ 21 In order for us reverse the entry of the default judgment, Wife "must not only show that the judgment was entered against h[er] through excusable neglect (or any other reason specified in Rule 60(b)), but [s]he must also show that h[er] motion to set aside the judgment was timely,[3] and that [s]he has a meritorious defense to the action." *State ex rel. Dep't of Soc. Servs. v. Musselman*, 667 P.2d 1053, 1055-56 (Utah 1983) (footnote omitted). "[I]t is unnecessary, and moreover inappropriate, to even consider the issue of meritorious defenses unless the court is satisfied that a sufficient excuse [under rule 60(b) ] has been shown." *Id.* at 1056.

¶ 22 In *Masters v. LeSeuer*, 13 Utah 2d 293, 373 P.2d 573 (1962), "the [defendant's] attorney thought he had filed an answer but ... he had mistakenly not done so." *Id.* at 573. The Utah Supreme Court held that the trial court did not abuse its discretion in granting a default judgment in favor of the plaintiff when the evidence was that "the attorney then representing the plaintiff called the defendant's attorney's attention to the fact that the matter was in default and that a default judgment would be taken un-

---

1. For reasons explained below, we treat Paragraph 17 of the divorce decree as alimony and, accordingly, review the trial court's modification of Paragraph 17 for an abuse of discretion.

2. We do, however, note that Wife's rule 6-401 argument fails even if we were to reach the issue. Rule 6-401 states that all domestic matters "shall be referred to the commissioner upon filing with the clerk of the court unless otherwise ordered." Utah R. Jud. Admin. 6-401(1). "Ordinarily, the use of the word 'shall' in a statute creates a mandatory condition, eliminating any discretion on the part of the courts." *Diener v. Diener*, 2004 UT App 314, ¶ 12, 98 P.3d 1178. "However-er, the effect of rule 6-401 must be colored by a recognition that commissioners are not vested

with the authority to make decisions involving 'core judicial functions.'" *Cox v. Krammer*, 2003 UT App 264, ¶ 10, 76 P.3d 184 (quoting *State v. Thomas*, 961 P.2d 299, 302 (Utah 1998)). Thus, we disagree with Wife's interpretation of rule 6-401. Our precedent makes clear that a court commissioner cannot exercise "core judicial functions," and any interpretation of the rule that mandates a commissioner's role in a core judicial function (such as issuing a default judgment) would be at odds with our prior decisions. *See Thomas*, 961 P.2d at 302.

3. The timeliness of Wife's motion to set aside the default judgment is undisputed, and we therefore decline to further analyze this prong.

less something was done." *Id.; see also Pacer Sport & Cycle, Inc. v. Myers*, 534 P.2d 616, 617 (Utah 1975) (finding no excusable neglect under rule 60 where defendant "assumed the action had been taken care of and therefore took no steps to file an answer to the complaint").

¶ 23 Here, Wife's trial counsel failed to file responses to Husband's Amended Petition to Modify Divorce Decree, never bothering to explain the inaction. This alone makes the trial court's grant of default judgment proper and the present case analogous to *Masters*. The supreme court has previously defined "excusable neglect" as "the exercise of 'due diligence' by a reasonably prudent person under similar circumstances." *Mini Spas, Inc. v. Industrial Comm'n*, 733 P.2d 130, 132 (Utah 1987) (citing *Airkem Intermountain, Inc. v. Parker*, 30 Utah 2d 65, 513 P.2d 429, 431 (1973)). Given that Wife's trial counsel was made aware of the Amended Petition several times "and [knew that] a response was necessary, [his] neglect or mistake was not excusable." *Id.* We see no reason why a simple failure to respond to an Amended Petition to Modify Divorce Decree should be considered excusable neglect. *Cf. Musselman*, 667 P.2d at 1054–57 (finding that a week-long hospital stay and a several-week convalescent period constituted excusable neglect in the untimely filing of a responsive pleading).

¶ 24 Wife's trial counsel also failed to respond to Husband's discovery requests. In his affidavit, Wife's trial counsel suggested that this particular failure may have been due to mail delivery problems at his office building. Even assuming that Wife's trial counsel never received the discovery orders due to such mail delivery problems and was unaware of the tardiness of his responses, it does not constitute excusable neglect under our case law when it is coupled with a party's failure to exercise due diligence. *Cf. Black's Title, Inc. v. Utah State Ins. Dep't*, 1999 UT App 330, ¶ 10, 991 P.2d 607 (refusing to find excusable neglect where a party failed to

exercise due diligence by maintaining contact with adverse party). Thus, the trial court did not abuse its broad discretion under rule 60(b).

## II. Modification of the Divorce Decree

¶ 25 The trial court properly modified the divorce decree. "Before the trial court can modify a divorce decree, it must find that there has been a 'substantial material change of circumstances not foreseeable at the time of the divorce.'" *Williamson v. Williamson*, 1999 UT App 219, ¶ 8, 983 P.2d 1103 (quoting Utah Code Ann. § 30–3–5(7)(g)(i) (1998) (current version at Utah Code Ann. § 30–3–5(8)(g)(i) (2007))). Such findings must be "on all material issues, and [the court's] failure to delineate what circumstances have changed and why these changes support the modification made in the prior divorce decree constitutes reversible error unless the facts in the record are clear, uncontroverted and only support the judgment." *Whitehouse v. Whitehouse*, 790 P.2d 57, 61 (Utah Ct.App.1990).[4]

¶ 26 "[F]or the trial court to terminate an alimony award, there must be an articulated basis for doing so," *Williamson*, 1999 UT App 219, ¶ 12, 983 P.2d 1103. For example, the trial court "must be persuaded that the recipient spouse will be able to support him—or herself at a standard of living to which he or she was accustomed during the parties' marriage, or that the payor spouse is no longer able to pay." *Id.* (alterations omitted); *see also Rehn v. Rehn*, 1999 UT App 41, ¶ 6, 974 P.2d 306 (stating that in determining the amount of spousal support, "a trial court must consider the needs of the recipient spouse; the earning capacity of the recipient spouse; [and] the ability of the obligor spouse to provide support"). While "property settlements are entitled to a greater sanctity than alimony and support payments in proceedings to modify divorce decrees ..., property settlements are not sacrosanct and are not beyond the power of a court of equity to modify." *Chan-*

---

4. The material changes of circumstances here were Husband's approximate thirty-five percent increase in income, as well as Wife's marriage and impending move to Texas, but not the sale of the home. We note that the trial court did not include the proceeds of this sale in the imputation of Wife's income.

*dler v. West,* 610 P.2d 1299, 1300 (Utah 1980). When categorizing items in a divorce decree, courts should look to substance over form to determine "whether the debt [of an obligor spouse to a receiving spouse] is in the nature of alimony, maintenance or support." *Holt v. Holt,* 672 P.2d 738, 743 (Utah 1983).

¶ 27 In the present case, Wife sought "temporary alimony" of "$250.00 bi-weekly" in the lead-up to the divorce decree, which ultimately gave Wife "$231.00 bi-weekly for a period of seventy-two months." Husband repeatedly claimed in his discovery motions and in his Affidavit in Support of Default Judgment that this $231.00 was in actuality contemplated by the parties as a form of spousal support. Husband also claims that the parties categorized the $231.00 bi-weekly payments (as well as the debt payment assumption) as a "property settlement" under Paragraph 17 of the divorce decree in order to reduce Wife's potential tax liability and Husband's risk of a larger support award at trial. During the entire course of litigation, Wife offered no affidavit or any other evidence to controvert Husband's claims on this or any other matter. Similarly, in *Bair v. Bair,* 737 P.2d 177 (Utah 1987), the "defendant d[id] not controvert [the] plaintiff's responsive affidavit which explained that the payment was designated as 'spousal support' simply to afford [the] defendant a tax advantage," *id.* at 180, and the court concluded that the payment constituted a property settlement, *see id.* at 179. Therefore, the trial court did not abuse its discretion when treating Paragraph 17 of the divorce decree as spousal and child support, or by modifying the decree itself in regards to Paragraph 17.

## CONCLUSION

¶ 28 We affirm the trial court's denial of Wife's Motion to Set Aside Default Judgment; her trial counsel's carelessness does not constitute "mistake, inadvertence, surprise, or excusable neglect," *see* Utah R. Civ. P. 60(b). We also affirm the trial court's modification of the divorce decree's Paragraph 17 because Wife offered no evidence to controvert Husband's claims, which are supported by evidence in the record, that Para-

graph 17 was intended as de facto spousal support.

¶ 29 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and GREGORY K. ORME, Judge.