2010 UT App 34

**DIXON BUILDING, LLC, Plaintiff and Appellee,**

v.

**Adrian JEFFERSON and Rosae L. Jefferson, Defendants,**

**Bad Boys Bail Bonds, Inc., Appellant.**

No. 20081062–CA.

Court of Appeals of Utah.

Feb. 11, 2010.

C. Danny Frazier and Michael R. Power, West Valley City, for Appellant.

David L. Bird and Nickolas S. Rice, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Bad Boys Bail Bonds, Inc. (Bad Boys) appeals from the district court's denial of Bad Boys's motion to reconsider the ruling on Bad Boys's motion to set aside judgment, for joinder of Bad Boys, and for exoneration of bond. We reverse.

## BACKGROUND

¶ 2 Dixon Building, LLC (Dixon) caused to be served on Adrian and Rosae L. Jefferson (the Jeffersons) a three-day notice to pay rent or quit premises. The Jeffersons failed to pay the rent and other amounts due and owing and failed to vacate the premises. Thereafter, Dixon filed a complaint in the district court seeking to evict the Jeffersons and recover damages based on unlawful detainer.

¶ 3 Dixon then filed a request for hearing and notice setting. The district court scheduled an immediate occupancy hearing, after which the district court ordered the Jeffersons to "execute and file a possession bond in the amount of $10,000.00, in the form of a cash bond or property bond, . . . for the benefit of [Dixon] for all costs and damages actually adjudged against you in this action."

Bad Boys posted a $10,000 bond on behalf of the Jeffersons.

¶ 4 The district court subsequently held an evidentiary hearing and ordered the Jeffersons to vacate the premises by July 6, 2008, and pay damages to Dixon totaling $19,343.52. The district court then ordered Bad Boys to forfeit to Dixon $10,000 to be paid from the bond filed with the court. Bad Boys filed a motion seeking to have the district court set aside the order requiring the forfeiture of $10,000 to Dixon and exonerate the bond posted by Bad Boys (motion to set aside judgment). Bad Boys argued that the bond that it posted was an appearance bond only and was not a possession bond ensuring the payment of cash in the event the Jeffersons lost the case. Bad Boys filed a notice to submit, and Dixon filed an objection.

¶ 5 After reviewing the parties' respective legal positions, the district court denied Bad Boys's motion and ruled that Bad Boys had the opportunity to seek to intervene in the action prior to the district court entering judgment against the Jeffersons, but that Bad Boys had failed to do so and could not then seek to join in the action as a defendant. The district court further ruled that Bad Boys is in the business of issuing bonds and should have been aware that the case was a civil lawsuit requiring a possession bond and not a criminal action requiring a bail bond. Bad Boys filed a motion to reconsider. Dixon filed a motion requesting an order to show cause against Bad Boys asserting that Bad Boys should be held in contempt for failing to comply with the district court's previous order requiring Bad Boys to forfeit to Dixon $10,000 to be paid from the possession bond. The district court ruled that

> Bad Boys was uniquely qualified to discern the difference between various types of bonds. Clearly, Bad Boys understood that it was posting a bond in the context of a

civil case and not a criminal case. It now appears that Bad Boys should have sought legal counsel about the potential implications of posting a bond for an unlawful detainer action. Its failure to seek counsel and its purported reliance on court personnel does not relieve Bad Boys of its obligations under the bond.

The district court then deferred a finding of contempt if Bad Boys complied with the court's order within ten days. The district court entered a judgment against Bad Boys on December 29, 2008. Bad Boys now appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 6 Bad Boys argues that the district court erred by entering a judgment against it without regard to the actual language of the bond it had filed and by refusing to exonerate the bond after Bad Boys had fully performed its obligations under that bond.[1] "A motion or action to modify a final judgment is addressed to the discretion of the trial court, the exercise of which must be based on sound legal principles in light of all relevant circumstances." *Gillmor v. Wright*, 850 P.2d 431, 434 (Utah 1993) (internal quotation marks omitted).

■ ¶ 7 Bad Boys also argues that the district court erred by denying Bad Boys's rule 60(b) motion to set aside the judgment.

> A trial court has discretion in determining whether a movant has shown [rule 60(b) grounds], and this court will reverse the trial court's ruling only when there has been an abuse of discretion. More specifically, in the context of a denial of a rule 60(b) motion, [w]e review a district court's findings of fact under a clear error standard of review, while [w]e review a district court's conclusions of law for correctness, affording the trial court no deference. Further, although the existence of a meritorious defense may be a factor, [a]n ap-

---

1. Our review of the record reveals that Dixon did not file a possession bond. *See generally* Utah Code Ann. § 78B–6–808 (2008) ("At any time between the filing of the complaint and the entry of final judgment, the plaintiff may execute and file a possession bond.... The defendant may remain in possession if he executes and files a counter bond in the form of a corporate bond, a

cash bond, certified funds, or a property bond executed by two persons who own real property in the state and who are not parties to the action."). We do not, however, consider the implication of Dixon's failure to file a possession bond because the parties do not raise this issue on appeal.

peal of a Rule 60(b) order addresses only the propriety of the denial or grant of relief.

*Swallow v. Kennard,* 2008 UT App 134, ¶ 19, 183 P.3d 1052 (alterations in original) (internal quotation marks and citations omitted), *cert. denied,* 199 P.3d 367 (Utah 2008).

¶ 8 Bad Boys also asserts that the district court erred by denying Bad Boys's motion for joinder. "The granting of a motion to join offenses or defendants is a matter which rests within the sound discretion of the trial judge, and this [c]ourt will not interfere with that discretion unless it is shown to have been clearly abused." *State v. Peterson,* 681 P.2d 1210, 1214 (Utah 1984).

## ANALYSIS

¶ 9 Bad Boys first argues that the district court erred in granting a judgment to Dixon in the amount of $10,000 upon the bond Bad Boys posted, and ordering Bad Boys to "forfeit to [Dixon] the sum of $10,000.00, to be paid from the Possession Bond filed with the Court by [the Jeffersons]." Bad Boys asserts that because the bond it posted was an appearance bond, not a possession bond, its obligation was to pay the bond amount only if the Jeffersons failed to appear and not upon the underlying judgment. Bad Boys maintains that in accordance with the terms of the bond actually posted Bad Boys's obligations were fulfilled when the Jeffersons appeared at the evidentiary hearing held on June 30, 2008, where no further appearances were required, and, as a result, Bad Boys had no further obligations to the district court on behalf of the Jeffersons.

¶ 10 The bond form purports to be an Undertaking Of Bail and provides:

An order was made on the date of *6/11/08* by the above court, that the defendant be held to answer upon a charge of *[e]viction* upon which *he* has been duly admitted to bail in the sum of *$10,000–Ten Thousand &* ――― dollars.

NOW, We AMERICAN SURETY COMPANY, . . . a corporation of the State of Indiana, as Surety, duly authorized to transact business as Surety in the State of Utah, hereby undertake that the defendant, *Adrian Jefferson* will appear and answer the charge mentioned above in whatever court it may be presented, and will at all times hold *him* self amenable to the orders and process of the court, and if convicted, will appear for judgement [sic] and render *him* self in execution thereof, of [sic] if *he* fails to perform any of these conditions, that we will pay to [*Salt Lake City, Utah,*] the sum of $ *Ten Thousand* ――― Dollars, and if the defendant *Adrian Jefferson* does not make payment within thirty days after the forfeiture of the bond as provided by the statute, judgment shall be entered on motion of the Prosecuting Attorney with or without notice, in favor of the State of Utah and against us as sureties, for the amount set forth above.[ 2]

We interpret terms of a bond by applying principles of contract law. *See Baker v. Western Sur. Co.,* 757 P.2d 878, 881 (Utah Ct.App.1988) (interpreting a motor vehicle dealer's bond applying principles of contract law).

When interpreting a contract, we begin by looking within the four corners of the contract to determine the parties' intentions, which are controlling. If the language within the four corners of the contract is unambiguous, . . . a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law.

*Innerlight, Inc. v. Matrix Group, LLC,* 2009 UT 31, ¶ 14, 214 P.3d 854 (omission in original) (internal quotation marks and citation omitted). By the terms of the bond it is clear that the bond issued is an appearance bond. The bond provides that the Jeffersons will appear in court and if they fail to do so that Bad Boys will pay the bond amount of $10,000. This language is consistent with an appearance bond and not a possession bond. The bond does not include any language guaranteeing payment of the Jeffersons' obli-

---

**2.** The bond only deals with Adrian Jefferson and makes no mention of Rosae Jefferson. The district court treats the bond as having been filed on behalf of both Adrian and Rosae Jefferson. Neither party objects to this treatment, so we do not address it.

gations in the eviction action or guaranteeing any of the Jeffersons' debt. "The effect of furnishing a bail bond is the entering into a contract to guarantee that the principal will appear in court as required. It is the surety who assumes the risk of failure to comply and of forfeiture when his faith has been misplaced." *State v. Nelson,* 20 Utah 2d 229, 436 P.2d 792, 793 (1968).

¶ 11 Dixon argues, however, that Bad Boys should not be allowed to avoid paying Dixon the judgment amount simply because Bad Boys did not post the type of bond required in an unlawful detainer proceeding. *See generally* Utah Code Ann. § 78B–6–808 (2008). Dixon further argues that the district court ruled that Bad Boys was uniquely positioned to discern the difference between various types of bonds, and that its failure to post the appropriate type of bond does not relieve it of its obligations under the bond. We disagree.

¶ 12 In ordering Bad Boys to "forfeit to [Dixon] the sum of $10,000.00, to be paid from the Possession Bond filed with the Court by [the Jeffersons]," the district court effectively converted the bond from an appearance bond to a possession bond. The bond Bad Boys issued specifically identifies its character as an "undertaking of Bail" and guarantees only the Jeffersons' appearance in their eviction case. The bond is clearly not in a form contemplated as a possession bond under Utah Code section 78B–6–808. *See id.* § 78B–6–808(4)(b) ("The Defendant may remain in possession if he executes and files a counter bond in the form of a corporate bond, a cash bond, certified funds, or a property bond executed by two persons who own real property in the state and who are not parties to the action."). There is no indication in the record that Bad Boys represented that the bond issued was anything other than an appearance bond. Dixon could have protected itself by objecting to the form of the posted bond and seeking possession of the property under Utah Code section 78B–6–808(5). *See id.* § 78B–6–808(5) ("If the defendant does not elect and comply with a remedy under Subsection (4) within the re-

quired time, the plaintiff, upon ex parte motion, shall be granted an order of restitution. A constable or the sheriff of the county where the property is situated shall return possession of the property to the plaintiff promptly.").

■ ¶ 13 Under the facts of this case, the district court was not justified in and did not have the equitable power to, in effect, convert the appearance bond to a possession bond and alter Bad Boys's contractual obligations. *Cf. U–M Invs. v. Ray,* 701 P.2d 1061, 1062 (Utah 1985) ("We recognize that in construing the terms of a bond executed by a voluntary or private surety, the rule of *strictissimi juris* applies, and the private surety's liability is limited by the terms of the contract."). The terms of the bond clearly demonstrate that, however ill-suited it may have been in the context of a civil action, the bond Bad Boys executed was undisputedly an appearance bond. In construing the terms of the bond, the district court was required to limit Bad Boys's liability to the terms of the bond and cannot disregard those terms to impose the type of liability directed in the district court's order. Bad Boys was not a party to the district court's order instructing the Jeffersons to execute and file a possession bond and the district court cannot convert Bad Boys's bond to a possession bond to conform with an order which does not involve or obligate Bad Boys. If Dixon believed that the bond issued did not conform with the district court's order, or was deficient in any manner, it should have pursued an order of restitution. *See* Utah Code Ann. § 78B–6–808(5) ("If the defendant does not elect and comply with a remedy under [s]ubsection (4) within the required time, the plaintiff, upon ex parte motion, shall be granted an order of restitution. A constable or the sheriff of the county where the property is situated shall return possession of the property to the plaintiff promptly."). As a result, we conclude that the district court erred in its order for payment of possession bond requiring Bad Boys to forfeit the bond amount of $10,000 to Dixon.[3] Accordingly, the judgment is reversed.

3. Because this issue is dispositive, we do not address Bad Boys's arguments regarding the dis-

trict court's denial of Bad Boys's rule 60(b) mo-

## CONCLUSION

¶ 14 The terms of the bond that Bad Boys posted on behalf of the Jeffersons in the unlawful detainer action limited Bad Boys's obligations and guaranteed only that the Jeffersons would appear in court as required. The district court ordered, "the Judgment entered in this action, and good cause showing ... that Bad Boys ... shall forfeit to [Dixon] the sum of $10,000, to be paid from the Possession Bond filed with the Court." In this case, Bad Boys had not filed a possession bond or represented that it had filed a possession bond. Under these circumstances, the district court erred when it essentially converted Bad Boys's bail bond to a possession bond and thereafter ordered forfeiture of the bail bond. We reverse the judgment.

¶ 15 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and GREGORY K. ORME, Judge.

tion to set aside the judgment and motion for joinder.